UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DENNIS HEINRICH,                    )   No. CV 04-09663-SS
                                    )
              Plaintiff,            )
                                    )   MEMORANDUM DECISION AND ORDER
         v.                         )
                                    )
JO ANNE B. BARNHART,                )
Commissioner of the Social         )
Security Administration,           )
                                    )
              Defendant.            )
_____)

    Dennis Heinrich ("Plaintiff") seeks review of Jo Anne B. Barnhart's
(the "Commissioner," "Defendant," or "Agency") decision denying his
application for social security benefits, having filed a Complaint on
December 2, 2004.  Plaintiff is represented by Marc V. Kalagian Esq.
Defendant is represented by Assistant United States Attorney Kathryn M.
Ritchie.   The parties have consented to the jurisdiction of the
undersigned United States Magistrate Judge, pursuant to 28 U.S.C. §
636(c).

//

//

//

This matter is before the Court on the parties' Joint Stipulation that was filed on May 8, 2006.  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## PROCEDURAL HISTORY

On January 3, 2003, Plaintiff, then age fifty-one, filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income under Titles II and XVI of the Social Security Act.[1] (Administrative Record ("AR") 45-47).  Plaintiff alleged a disability onset date of November 6, 2001 on the basis of coronary artery disease, status post myocardial infarction with angioplasty/stent placement, hypertension and cardiomyopathy.  (AR 17).  He further alleged that he suffered from constant fatigue.  (AR 49).

The Agency initially denied Plaintiff's claim for benefits on June 16, 2003.  (AR 29).  Plaintiff made a timely request for reconsideration on August 1, 2003.  (AR 33).  On September 5, 2003, the Agency again denied the Plaintiff's claim for benefits.  (AR 34).  Plaintiff therefore requested a hearing by an Administrative Law Judge ("ALJ") on November 4, 2003.  (AR 39).

---

[1]   Title II of the Social Security Act is codified at 42 U.S.C. §§ 401-434 ("Federal Old-Age, Survivors, and Disability Insurance Benefits"). Title XVI of the Social Security Act is codified at 42 U.S.C. §§ 1381-1385 ("Supplemental Security Income for the Aged, Blind, and Disabled").

2

A hearing before ALJ Edward C. Graham was conducted on June 22, 2004, at which Plaintiff appeared with counsel and testified. (AR 257-277). Plaintiff was 53-years-old at the time of the hearing. (AR 13). A vocational expert also testified.

On July 13, 2004, ALJ Graham issued a decision denying benefits. (AR 10-18). Plaintiff sought review of this decision before the Appeals Council and submitted additional evidence. (AR 9, 218-256). On September 30, 2004, the Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner. (AR 5-7). Plaintiff commenced the instant action on December 2, 2004.

## FACTUAL BACKGROUND

### A. **Plaintiff's Medical History**

Plaintiff suffered from a myocardial infarction on November 3, 2001 and underwent angioplasty with stent replacement on November 14, 2001 at Harbor UCLA Medical Center. (AR 100). Plaintiff returned to the hospital on April 16, 2002 for a follow-up examination with Dr. Jennifer Collins. (AR 180). He returned again on April 23, 2002 with complaints of constant fatigue and dizziness. (AR 178). After Plaintiff returned on June 28, 2002 with additional complaints of fatigue, Dr. Collins concluded that Plaintiff should not engage in heavy lifting or prolonged standing from November, 2001 through November, 2002. (AR 177).

Dr. Collins then referred Plaintiff to Dr. William Stringer for a cardiopulmonary exercise test on July 19, 2002. (AR 184). The test

3

showed only moderately reduced exercise capacity. (AR 186). Dr. Stringer noted that, "[Plaintiff] terminated the test mainly due [to] leg fatigue in his thighs bilaterally. He denied any chest pain, shortness of breath or fatigue." (AR 185). Additionally, Plaintiff admitted that he walks four miles a day. (AR 161). Plaintiff also stated that he could ride a bike for six miles without difficulty. (AR 174, 161, 160).

An exercise ECG on October 24, 2002 showed ejection fraction of about 50-55% at rest increasing to about 60% with stress. (AR 179). Cartiac catheterization on January 2, 2003 showed mild non-obstructive coronary artery disease. (AR 164). A carotid ultrasound on February 13, 2003 was normal. (AR 160). The notes from Plaintiff's January 9, 2003 examination remark that he may be suffering from "dehydration and over-exercising." (AR 161).

Plaintiff also complained of lower back pain starting in September 2002, which radiates down his legs. (AR 173). Plaintiff was diagnosed with osteoarthritis. However, Plaintiff has not received any treatment for his back pain. X-rays of the lumbar spine show hypertrophic changes at L5-S1. (AR 213). An examination on August 14, 2003 revealed no neurological deficits. (AR 213).

**B. <u>Consultative Examination</u>**

Plaintiff was examined at the request of the Social Security Administration by Dr. Jamshid Tamiry. Plaintiff informed Dr. Tamiry that he tries to walk three times per week for about thirty minutes.

4

(AR 117).   During the physical examination, Dr. Tamiry noted that Plaintiff was able to move around the room freely and did not require any assistance climbing on and off the examining table.  (AR 118).  The doctor also noted that there were occasional irregular heartbeats but there was no evidence of congestive heart failure.  (AR 121).  While examining the spine the doctor noted that range of motion was limited with flexion 70/90 degrees, extension 20/25 degrees and lateral flexion 20/25 degrees.  (AR 119-120).  After completing the exam, Dr. Tamiry reported that Plaintiff would be able to perform the full range of light work.  (AR 121).

### C. **Plaintiff's Testimony**

    At the hearing, Plaintiff testified that he was last employed in June 1999 as a semi-truck driver.  (AR 262).  Plaintiff stopped working because of stress and exhaustion.  (AR 261).  On November 6, 2001 Plaintiff suffered a heart attack.  (AR 261). Since the heart attack Plaintiff has felt: "[E]xtremely exhausted and [has] a lot of fatigue and . . . a hard time breathing and walking."  (AR 263).  Plaintiff claims that he is only able to walk a block or two before getting tired. (AR 268).  However, Plaintiff also testified that he regularly takes out the trash and does moderate housework.  (AR 270).

### D. **The Vocational Expert's Testimony**

    Mr. Edwin T. Kurata, a vocational expert, also testified at the hearing.  He identified Plaintiff's past relevant work as a semi-truck driver, which Plaintiff performed as medium to heavy work.  (AR 274).

The ALJ posed a hypothetical question to Mr. Kurata involving an individual of the same age, education and work experience as Plaintiff who could (1) perform light work and (2) with no temperature extreme limitations. (AR 275). The vocational expert stated that there were three different positions available with those criteria, offering 28,000 jobs in California and 242,000 jobs nationwide. (AR 275). The ALJ also presented the same hypothetical to the vocational expert, except that he substituted "sedentary" work. Mr. Kurata again listed three different entry level positions with 30,000 jobs nationwide. (AR 275).

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 404.1520. The steps are:

---

[2]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 404.1510.

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. § 404.1520(a)(4).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54 (citing Tackett).  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking

7

1   into account the claimant's residual functional capacity,[3] age,

2   education, and work experience. <u>Tackett</u>, 180 F.3d at 1098, 1100;

3   <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. § 404.1520(g). The Commissioner may

4   do so by the testimony of a vocational expert or by reference to the

5   Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart

6   P, Appendix 2 (commonly known as "the Grids"). <u>Osenbrock v. Apfel</u>, 240

7   F.3d 1157, 1162 (9th Cir. 2001) (citing <u>Tackett</u>). When a claimant has

8   both exertional (strength-related) and nonexertional limitations, the

9   Grids are inapplicable, and the ALJ must take the testimony of a

10   vocational expert. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000)

11   (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

12

13                                      **THE ALJ'S DECISION**

14

15     At the first step of the sequential evaluation process, the ALJ

16   observed that Plaintiff had not engaged in substantial gainful activity

17   since the alleged onset date of his disability. (AR 17). Next, the ALJ

18   found that Plaintiff had the following medically determinable

19   impairments: (1) coronary artery disease, (2) status post myocardial

20   infarction with angioplasty/stent placement, (3) hypertension, and (4)

21   cardiomyopathy. (AR 17). The ALJ found that all of these impairments

22   were severe.[4] (AR 17).

23

24 ————————————

25     [3] Residual functional capacity is "the most [one] can still do

26 despite [her] limitations" and represents an assessment "based on all
the relevant evidence." 20 C.F.R. § 404.1545(a).

27     [4] An impairment is severe if it significantly limits a claimant's

28 physical or mental ability to do basic work activities, which include
walking, standing, sitting, and lifting. 20 C.F.R. § 404.1521.

1    At the third step, the ALJ found that Plaintiff's impairments did
2    not meet or equal any of the impairments appearing in the "Listing of
3    Impairments" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1,
4    Regulation No. 4. (AR 17).  In the fourth step of his analysis, the ALJ
5    weighed the medical evidence in determining Plaintiff's residual
6    functional capacity. (AR 13-17).  The ALJ concluded that the Plaintiff
7    was capable of performing a significant range of light work as defined
8    in 20 C.F.R. §§ 404.1567 and 416.967, with no exposure to temperature
9    extremes.   (AR 15).   In analyzing Plaintiff's residual functional
10   capacity, the ALJ considered Plaintiff's subjective complaints of pain,
11   but did not find them totally credible.  (AR 17).

12

13   Under step four, the ALJ found that Plaintiff is unable to return
14   to his previous work because it was of a medium to heavy nature. (AR
15   18).  Based on the testimony of the vocational expert, the ALJ found
16   that under step five there are a significant number of jobs in the local
17   and national economy which Plaintiff could perform.  (AR 18).
18   Accordingly, the ALJ determined that Plaintiff was not disabled. (AR
19   18).
20   //
21   //
22   //
23   //
24   //
25   //
26   //
27   //
28   //

9

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**DISCUSSION**

Plaintiff argues that the ALJ: (1) did not properly evaluate his credibility, (2) incorrectly determined his residual functional capacity

('RFC'), and (3) erred by finding that Plaintiff was not disabled for a closed period of time.  This Court disagrees with all three contentions.

### A.    The ALJ Properly Evaluated Plaintiff's Credibility

Generally, a claimant's credibility becomes important at the stage where the ALJ assesses residual functional capacity because the claimant's subjective statements may denote greater limitations than can medical evidence alone.  Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing Social Security Ruling 96-7p).  For this reason, the ALJ may not reject the claimant's statements regarding his limitations merely because they are not supported by objective evidence.  Id. (citing Fair, 885 F.2d at 602).  Rather, the ALJ "must give specific, convincing reasons for rejecting the claimant's subjective statements." Id. at 1148 (citing Fair, 885 F.2d at 602); see also Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (requiring "'specific, cogent reasons for the disbelief'") (citation omitted).  When the Plaintiff's testimony is supported by medical evidence, the ALJ must provide "clear and convincing reasons" for rejecting that testimony.  Smolen, 80 F. 3d at 1280.

Plaintiff testified that he becomes "extremely exhausted," feels like he has a lot of "fatigue" and has a "hard time breathing and walking."  (AR 263).  He confirmed that his primary problem is extreme fatigue which he believes is due to his heart condition.  (AR 264, 265). He also testified that he experiences pain in his back and leg due to arthritis.  (AR 266).

Plaintiff claimed during the hearing that he can only walk a "block and a half or two blocks" and then he has to rest (AR 268); that he can only stand for five minutes (AR 268); and he was unable to give any estimate of his ability to stand, sit and walk in an eight hour period. (AR 271). He later added, however, that he can walk "like about a quarter of a mile" but he needs to take breaks. (AR 272). He does some housework and can drive his car. (AR 272). He goes to church every Sunday. (AR 273).

The ALJ expressly found that Plaintiff's subjective complaints were not fully credible on several grounds. (AR 15). First, the ALJ observed that there is no evidence of severe disuse muscle atrophy that would be expected with the degree of incapacity alleged by Plaintiff. (AR 15-16). The medical evidence supports this factor for rejecting Plaintiff's complaints, as records show that Plaintiff's musculoskeletal examination was within normal limits. (AR 119). The treating doctor's medical records do not show any evidence of muscle atrophy. This was a legitimate reason to reject Plaintiff's testimony.

Additionally, the ALJ found that the treatment Plaintiff receives is inconsistent with his physical complaints. Since November of 2001, Plaintiff has had no inpatient hospitalizations or emergency room care. (AR 16). The ALJ stated, "It is reasonable to assume that if the claimant were experiencing the disabling problems alleged, he would have received more aggressive treatment." (AR 16). Courts have recognized that an ALJ may rely upon a claimant's lack of treatment as one basis for rejecting the claimant's subjective complaints testimony. Drouin v. Sullivan, 966 F. 2d 1255, 1258 (9th Cir. 1992).

Finally, the ALJ found that Plaintiff's daily activities were inconsistent with his allegation of total disability. (AR 16). Plaintiff has reported numerous times to his doctors at Harbor/UCLA that he walks four miles a day and rides a bike. (AR 174, 161, 160). In his testimony, Plaintiff also stated that he occasionally does limited housework and gardening. (AR 64, 270). Plaintiff occasionally drives a car and goes to church every Sunday. (AR 272-273). These activities led the ALJ to believe that the fatigue Plaintiff suffers is not nearly as intense as his testimony would suggest. It was proper for the ALJ to consider Plaintiff's daily activities when evaluating his credibility. See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).

In sum, the ALJ provided specific, clear and convincing reasons for discrediting Plaintiff's statements regarding his symptoms. Additionally, the ALJ's reasons for his credibility findings are accurately reflected the record. Under these circumstances, where the findings are supported by substantial evidence in the record, the Court cannot engage in "second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citing Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999)). The ALJ did not err in his credibility findings.

**B.**      **The ALJ Properly Determined Plaintiff's Residual Functional Capacity**

As noted above, the ALJ concluded that Plaintiff was capable of performing light work with no exposure to temperature extremes. (AR 18). Contrary to Plaintiff's assertions, the ALJ's determination of this RFC is without error. Not only is it supported by the propriety of

13

1  the ALJ's credibility analysis, as discussed above, but also by the

2  consultative examination and the medical evidence in the record.

3

4     Dr. Jamshid Tamiry conducted his consultative examination on May

5  21, 2003. (AR 117-121). There was no evidence of congestive heart

6  failure during the physical examination, although occasional irregular

7  heart beats were noted. (AR 121). Plaintiff had a pulse rate of 60 and

8  blood pressure was measured at 118/70. (AR 121). Plaintiff

9  demonstrated a grip strength of forty pounds in each hand. (AR 121).

10  Dr. Tamiry noted that Plaintiff walked normally and did not require an

11  assistive aid to get across the room. (AR 121). Additionally,

12  Plaintiff was able to easily get on and off the examining table with no

13  help. (AR 121).

14

15     Dr. Tamiryn made a diagnosis of hypertension, coronary artery

16  disease (status post coronary angioplasty with stenting X2) and

17  cardiomyopathy. (AR 120-121). He believed that Plaintiff could lift

18  and carry twenty pounds occasionally and ten pounds frequently. (AR

19  121). He also found that Plaintiff was limited to standing and walking

20  for six hours and sitting for six hours cumulatively. (AR 121). Dr.

21  Tamiry's opinions were based on a physical examination of Plaintiff.

22  (AR 117). In this situation, a consultative report alone may furnish

23  substantial evidence for the ALJ's decision. Andrews v. Shalala, 53

24  F.3d 1035, 1041 (9th Cir. 1995) (opinion of a nontreating source based

25  on independent clinical findings may itself be substantial evidence)

26  (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

27

28

The later medical evidence further supports the ALJ's decision regarding the RFC.   There is no evidence of treatment after the angioplasty in November 2001 until a follow-up visit in April 2002, five months later.   (AR 180).   On July 19, 2002, Plaintiff underwent a Cardiopulmonary Exercise Test.   (AR 184).   Plaintiff gave a good effort on the test and had to stop not because of fatigue, but because of pain in his thighs.   (AR 185).   The results of the test showed that the Plaintiff has only a moderately reduced exercise capacity. (AR 185). On August 20, 2002, Plaintiff reported to his doctors that he was able to walk four miles a day without difficulty.   (AR 174). Additionally, Plaintiff testified that he routinely carries the trash out at night, which is consistent with being able to life ten pounds. (AR 270).   The non-examining physician, Dr. Sohn, opined that, based upon a review of the medical evidence, Plaintiff retained the ability to do light work. (AR 129).   These findings are consistent with the ALJ's RFC conclusion and constitute substantial evidence to support his decision.

In short, the ALJ properly assessed Plaintiff's RFC.   The consultative examination by Dr. Tamiry, the results of the exercise test, the statements made to the doctors regarding walking four miles a day, and Dr. Sohn's opinion, combined with the Plaintiff's own testimony of his daily activities, serves to furnish adequate support for the ALJ's RFC finding.

**C.**      <u>The ALJ Correctly Found That There Was No Disability For A</u>
<u>Closed Period Of Time</u>

Plaintiff contends that the ALJ erroneously applied the consultative examiner's RFC determination retroactively. Dr. Tamiry, the consultative examiner, examined Plaintiff on May 21, 2003, 18 months after the alleged onset of the disability. (AR 117). Plaintiff contends that the medical records from November 2001 through May 2003 support a finding of disabled, at least for that time period. Thus, Plaintiff argues the ALJ should have found him to be disabled for a closed period of time. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. <u>Aukland v.</u> <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing <u>Tackett</u>, 180 F.3d at 1097); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989)). However, this Court concludes that substantial evidence supports the ALJ's conclusions and that the ALJ did not err by considering Dr. Tamiry's opinion.

First, as Dr. Tamiry's examination occurred relatively close in time to the alleged period of disability, it is not clear that consideration of Dr. Tamiry's May 21 examination truly qualifies as "retroactive" consideration. There is no showing by Plaintiff that his condition changed or improved dramatically by May 21, 2003. To the contrary, Plaintiff's testimony suggests that his condition has not changed since his heart attack. (AR 264-266). Thus, whatever conclusions Dr. Tamiry reached after his examination of Plaintiff on May 21, 2003, would seem to be equally applicable to Plaintiff's condition

16

in the months prior to that date.  Thus, it is not clear that consideration of Dr. Tamiry's opinion was error.

Second, even prior to Dr. Tamiry's exam, there was substantial evidence in support of the ALJ's RFC determination.  As stated above, the treating physician's records (AR 155-208), Plaintiff's failure to seek medical attention for five months after angioplasty (AR 180), the results of the exercise test showing only moderate decrease in exercise (AR 184), Plaintiff reporting to doctors that he was walking four miles a day (AR 174), and Plaintiff's own testimony that he is able to do some housework and other activities (AR 64, 270), all combine to form substantial evidence for the ALJ to base his RFC determination on.

The only medical evidence that suggests Plaintiff was disabled during the eighteen month period is a brief note from Dr. Collins.  (AR 177).  The note restricts Plaintiff to "no heavy lifting or standing" for a one-year period of time.  While the note is dated July 28, 2002, the restrictions are retroactive and cover a period from November 2001 to November 2002.  (AR 177).  However, because this note is conclusory and provides no medical basis for the restrictions, the ALJ may discredit this finding.  See Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).

Plaintiff also cites Dr. Chung's letter of August 2003.  However, this letter is similarly inadequate because it only lists certain diagnoses in a conclusory fashion without specifically detailing the

impact of those diagnoses on Plaintiff's ability to work.   (AR 207).
Dr. Chung did mention Plaintiff's "exhaustion," but also noted that
there was no medical explanation for that symptom (<u>See</u> AR 207 ("chronic
exhaustion of unknown etiology")).

Thus, even if the ALJ erred in considering the May 21, 2003
consultative examiner's opinion, such consideration made no difference
to the ultimate outcome and should be considered harmless error.   <u>See</u>
<u>Curry v. Sullivan</u>, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error
rule applies to review of administrative decisions regarding
disability); <u>Booz v. Sec'y of Health and Human Servs.</u>, 734 F.2d 1378,
1380-81 (9th Cir. 1984) (same).   No remand is required.

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be
entered AFFIRMING the decision of the Commissioner and dismissing this
action with prejudice.   The Clerk of the Court shall serve copies of
this Order and the Judgment on counsel for both parties.

DATED: July 17, 2006.

/s/
_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE